**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

CLINTON P. ALLEN, )
)
       Plaintiff, )
)
v. ) Case No. CIV-17-091-JHP-KEW
)
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
)
       Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Clinton P. Allen (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 46 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a tractor-trailer driver. Claimant alleges an inability to work beginning March 15, 2012 due to limitations resulting from left knee pain, obesity, sciatic nerve pain, back pain, breathing problems, high blood pressure, depression, anxiety, panic attacks, and heart problems.

### Procedural History

On February 18, 2015, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 21, 2016, Administrative Law Judge ("ALJ") Deidre Dexter conducted an administrative hearing in McAlester, Oklahoma. On May 27, 2016, the ALJ issued an unfavorable decision. On January 13, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform sedentary work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's credibility; and (2) failing to reach an appropriate RFC determination.

### Credibility Analysis

In her decision, the ALJ determined Claimant suffered from the

severe impairments of obesity, sleep apnea, recurrent arrhythmias, atrial fibrillation, hypertension, and peripheral neuropathy. (Tr. 21). The ALJ concluded that Claimant retained the RFC to perform sedentary work. In so doing, the ALJ determined Claimant could lift, carry, push, and pull up to five pounds frequently and less than ten pounds occasionally. He could stand/walk for up to two hours in an eight hour workday and sit for up to six in an eight hour workday. Claimant could never climb ramps, stairs, ladders, ropes, or scaffolds. He was able to occasionally balance or stoop, but he could never kneel, crouch, or crawl. Claimant's job should not involve exposure to extreme heat, extreme cold, or humidity and wetness. Claimant's job should not involve exposure to dust, odors, fumes, and pulmonary irritants that would exceed those found in an office setting. Claimant could never be exposed to vibration, unprotected heights, or moving mechanical parts. (Tr. 24-25).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of touch up screener, clerical mailer, and document preparer, all of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 29). As a result, the ALJ found Claimant was not under a disability from March 15, 2012 through the date of the decision. Id.

Claimant contends the ALJ failed to properly assess his

credibility.  Claimant testified at the hearing that he lives with his mother in a single room, lower level apartment.  (Tr. 41-42).  Claimant has a driver's license and drove to the hearing.  Claimant worked for a couple of weeks in July but he stopped working because of congestive heart failure and kidney stones.  (Tr. 44).  Claimant testified concerning the requirements of his past employment.  (Tr. 45-61).

Claimant stated that he is 5'10.5" and weighs 408 pounds.  (Tr. 62, 69).  He began experiencing problems with his back in 2012 when he stopped working.  It felt like he had a cutting torch on his lower back.  He believed his problems arose from years of heavy lifting when he drove and loaded trucks.  (Tr. 62-63).  Claimant also had problems with his knee which was "blown out."  He could not afford to have surgery on the knee and had to try to rehabilitate it himself.  He also suffered from neuropathy and swelling and numbness of his right foot.  He could "barely" stand for two hours out of an eight hour day.  Claimant also has problems with carpal tunnel in both wrists and has not had an operation to correct the problem.  (Tr. 63).

Claimant testified that he has irritable bowel syndrome.  The condition requires him to stay on the toilet for an hour or two in the morning and might be on the toilet five times.  He sometimes does not get done on the toilet until around 11:00 a.m.  (Tr. 64).

Claimant takes medication including HCTZ and Lasix. These drugs cause Claimant to use the bathroom frequently, probably six times in an eight hour period. (Tr. 64-65). He stated that he is never pain free and has difficulty sleeping at night. (Tr. 65).

He was not aware he had heart problems until his weight increased with fluids and he was told he had atrial fibrillation and congestive heart failure. (Tr. 66). Claimant stated he went from 245 pounds to 390 pounds due to fluids. He does not have facilities available for rehabilitation and walking makes his back hurt. Id.

Claimant is no longer able to go to the club and dance, go to church, go fishing and hunting, take long walks, work out, or play music with friends. He experiences problems with fatigue. When his heart "is in bad shape", he can hardly get up or stand. He has problems walking. His medicine changed and he was able to breathe a bit better. However, he cannot afford the medication any longer. (Tr. 66-67).

Claimant also had problems with kidney stones. He could not afford the procedure to remove them so he had to wait for them to pass which took a very long time. (Tr. 68).

The ALJ employed the oft-used phrase that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this

decision." (Tr. 25). She proceeded to recite the medical opinion evidence which supported her RFC. The reviewing consultants, Dr. Luther Woodcock and Dr. Karl Boatman, provided an RFC less restrictive than the ALJ's RFC. (Tr. 90-92, 107-10). Dr. Theresa Horton's opinion on Claimant's mental status concluded that Claimant "appears capable of understanding, remembering and managing most simple and complex instructions and tasks with adequate adjustment into most settings." (Tr. 706). The ALJ found the opinion was supported by the medical record and "reveals little concern about his psychological state." (Tr. 27).

Dr. Jimmie Taylor performed a consultative examination of Claimant. He concluded Claimant had some decreased range of motion in his back, 5/5 grip strength, 5/5 dexterity, regular rate and rhythm to his heart with no murmurs or megaly, no edema or deformities to his extremities, a waddling, wide-based gait with not assistive device, heel and toe walks of 2/5, and tandem walk of 4/5. He noted Claimant had anxiety and depression. (Tr. 710). The ALJ afforded Dr. Taylor's opinion "great weight" due to its consistency with the records of the treating physicians and Claimant's testimony. (Tr. 27).

On December 14, 2015, Dr. Ayhan Zia, Claimant's cardiologist, authored a medical source statement on Claimant. He indicated Claimant could lift/carry occasionally less than ten pounds,

stand/walk less than two hours in an eight hour workday, sitting about six hours in an eight hour workday, never climb, kneel, crouch, or crawl and occasionally balance, limited feeling, limited temperature extremes, dust, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, and gases. (Tr. 808-10). The ALJ found Dr. Zia's opinion should be afforded "great weight." (Tr. 27).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses

or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements.  The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.  Moreover, none of the medical professionals offering opinions in the case have suggested that a more restrictive RFC based upon Claimant's testimony should result. Claimant does not indicate any specific error in the credibility assessment other than to cite the standard for evaluating credibility and stating the ALJ failed to follow it.

### RFC Determination

Claimant also states that the RFC assessment should have included further restrictions.  Again, the ALJ based her decision upon the medical opinion evidence recited herein.  Although Claimant contends the ALJ should have added restrictions to pushing and pulling in accordance with Dr. Zia's opinion, Dr. Zia merely checked

10

a line which indicated that pushing and pulling would be affected by his functional limitations without specifying a weight restriction. (Tr. 809). The ALJ imposed restrictions on pushing and pulling in the RFC which corresponded to the restrictions on lifting and carrying. (Tr. 24). The ALJ's RFC was consistent with Dr. Zia's restrictions in his opinion.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

capacity in question." <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE